Today, we have argument in the counterman matter, and we'll just jump right into it. I have a clock in front of me. I'm sorry, no red lights today, but I'll try to give you some notice when you're getting close. Mr. Goldberger, good afternoon. Tell me how much time you'd like for rebuttal, sir. Two minutes, if that's all right. Two minutes, wonderful. Thank you, and we're off. May it please the court. My name is Peter Goldberger, and it's my privilege this afternoon to represent James Counterman, who was the defendant below. Mr. Counterman lived in Northeast Pennsylvania, and he was a longtime drug user who sometimes sold methamphetamine. He pleaded guilty to a negotiated two-count information. One count was for possession with intent to distribute more than 50 grams of methamphetamine, and the other was for money laundering, which was purchasing local real estate properties with the proceeds of drug sales. The sensing the motion recommending a 20% downward departure, this would have resulted, assuming that there were no other adjustments, to a sentence of nine years or less. But the court imposed a 12-year sentence under the mistaken belief that a 15-year mandatory minimum applied on account of a prior drug conviction. The existence of a mandatory notwithstanding the government's motion would bump up the guidelines and affect the starting point for any departure or variance that the judge might grant. The sentence that was imposed, we say, was plain error for two reasons. First, the required pre-plea notice of any prior conviction was not timely filed, and second, the prior conviction that the government relied on was not for a serious drug felony or serious drug offense as defined under the 2018 First Step Act. That statute... Mr. Goldberger, let me cut to the chase. Don't you agree that Daniel's holding has not been overruled? If so, how can we, on the one hand, hold that criminal attempt to commit an offense involves a completed offense, while on the other hand, conspiracy to commit the same offense does not? That's the essence of what we have to do here in this case. On the second issue, that's right. Not on the first issue. But I... I have a question for you, Mr. Goldberger. It's literally true that... I'm sorry, Judge Greenaway, were you saying something? I'm so sorry. I couldn't hear you. Say it again, please. Is the sound all right? Yes. Go ahead. So while it's technically true, I suppose, that Daniel's has not been overruled. It has been abrogated, which is really all the same. So to turn to the second issue first, Daniel's, which held that attempted drug distribution under Pennsylvania law is an offense involving drug distribution. And I don't need to tell you that. I know, Judge Cowen, you wrote that opinion. The meaning of what it is for an offense to involve one of the listed kinds of conduct under that statute has been explicated and authoritatively decided under that precise statute by the United States Supreme Court in a subsequent decision, that is, Shular. And when the Supreme Court has construed a statute that's involved in the case differently than this court did in a precedential decision, the prior decision of this court is abrogated. So whether or not Daniel's would stand in an attempt case, which would be a somewhat different argument related, similar argument, but not the same as what I'm saying about conspiracy, we do know that the conduct, which is an element of the conduct, which is an element, which is necessarily involved in establishing a conspiracy offense, is the making of an agreement. It's not distributing or manufacturing or possessing with intent. So Daniel's could be distinguished in that way, but in terms of methodology, it's abrogated. So following that it's been abrogated by, why should we conclude that just as an attempt necessarily entails a complete offense, a conspiracy necessary entails the object of a conspiracy itself? Because that's not what the Supreme Court tells us involved means in this statute. It does in some sense, but not in the sense that Congress used the term according to the considered how to treat inchoate crimes like attempts and conspiracies. I didn't understand what about the Seventh Circuit case did you ask? Don't you agree that neither the two Supreme Court cases nor the Seventh Circuit considered how to treat inchoate crimes such as attempts and conspiracies? That's true. Well, the methodology depends on what conduct the element of the offense necessarily entails. Those are the words that the Supreme Court used. And the conduct, none of the three kinds of conduct that are listed in the statute is necessarily entailed in a conspiracy. Mr. Goldberger, you claim that the government's late filing of a notice of a prior conviction resulted in an unfair sentence. Could you address that specifically? What's the prejudice involved here? Right. So in Isaac, the court addressed a plain error under where the government had filed no notice at all in an 851 case. And the notice in this case was like one day, one day. That's correct. So it was after the important thing is not that it's a dead one day, but that it's after the entry of the plea, which is a drop dead deadline. So let me say had counsel, defense counsel, moved to strike that notice or objected at sentencing or both, as he should have, judge, you know, the court would have been obligated to strike the notice and sentence as if there were no change in the sentencing range due to the prior. I mean, it would affect the guidelines, but it wouldn't affect the statutory range. And if the court had proceeded nonetheless to sentence as if the notice were valid, this court would have been obligated under half a dozen precedents to reverse the sentence. So the question is how plain error applies in that situation. And it affected his substantial rights in two ways, one of which was not involved in Isaac, and is the simpler and more direct way. That is, there is a direct and logical connection between the imposition of a sentence that is three years longer than probably would otherwise have been imposed due to the error that the government made in failing to file the notice at the right time. The three-year difference in sentences, obviously prejudice in any way. Isaac, in Isaac, the sentence that was imposed was concurrent with a mandatory life sentence on another count. So you couldn't have had a more obvious case of lack of prejudice in the length of the sentence. Okay. Counts. How would his sentence have been different? Go ahead. The question is how would it have been different if the court had stricken the notice because it was late? The error was in failing to strike a belated notice. Okay. In other words, it should not have been taken into account because it was filed late. It should have been filed pre-sentence. Right. And all of this court's cases in the non-plain error context say that this statute is to be strictly enforced and is an automatic reversal when it's violated. But the government's claim, I'm sorry, I didn't quite really finish the second part of my long-winded answer to your question. The government focuses on the clues that exist in the record, notwithstanding the late notice. That's their entire, that's the basket they've put all their eggs in. Well, let me insert myself at the moment. I take it, Mr. Goldberger, that your position is, while obviously you're happy to respond to question number two, that we need not get to question number two and determine whether Daniels is in fact abrogated by Shular because if in dealing with question number one, our determination is there should never have been a sentence using the late 851, it goes back. But I was wondering about one thing as you responded to the questions posed on the 851A issue. It seems to me there are two potential prongs for prejudice. One is talking about how the sentence may have been different, but the that's your strongest argument, followed by if the government says anytime that it's late, just look at the plea agreement and you can figure it out. Well, that doesn't work well with every defendant and we don't want instances where a late filed 851A is applicable in some cases because it's purportedly clear in the plea agreement and it's not applicable in other cases because it's arguably less clear in those cases. I thought that's, is that the focus? Well, that is the, I spent most of my time on the prejudice point on discussing that. Yes, I agree. And what we have is not even roughly the equivalent of an 851 notice that happened to be in a differently labeled document, the plea agreement. What the government is relying on is hints and clues in the plea agreement, not real notice. Well, why is it notice to you when the plea agreement states mandatory minimum sentence, count one carries a mandatory minimum period of prison of 20 years. Wasn't this enough to satisfy the plain hard error standard? Well, for the reasons that Judge Greenaway said, and the ones in our brief, I would say no. First of all, there are two different factual bases in the statute under which the minimum could be bumped from 10 to 20 under that statute. One is a prior qualifying prior conviction of which proper notice is given. The other is if distribution of the drugs resulted in injury to a user of the drugs. And so you could as well say, this was a hint that the government was planning to bring a superseding charge or try to get the sentence enhanced in some way based on injury or even death of a user to bump it up to the 20 years. Well, tell me about the second part of the 851 sort of dynamic, if you will. And that is with regard to the conviction. There are two pieces of information the defendant wants to know. Are you going to seek an enhancement and what conviction are you going to use? Right now, it seems to me that in this case, there were three iterations of the 851A and there were at least two different convictions that were used. Ultimately, the one in the third iteration was not the same as the one in the prior two. That's right. I presume that part of your argument is, if you don't know which conviction is going to be on the source of the 851A, you can't make the decision about whether to plead or not. So for instance, if the government wrongly believes that a felony, I'm sorry, that a misdemeanor is a felony, a defendant could look at that and say, oh, I think they're just wrong. If they use that, there's nothing to worry about. Right. As opposed to a conviction, which I presume we have here in the third iteration of the 851A in which there's no question as to its applicability. Well, actually, your hypothetical even applies to the third iteration because they cited two convictions and it was only because the probation officer called them out in the pre-sentence report and said, look, the second one that you listed, this case from Oklahoma, is for simple possession of drugs and possession of paraphernalia, neither of which is even arguably a qualifying offense. The government proposed to rely, as I understand it, on either of two prior convictions, one of which was not applicable to anybody who could read the statute. So I'm completely agreeing with you, Judge Greenaway, on that. So I'm sorry if you said this and I didn't hear it. So would you agree with the proposition that we don't need to get to the Daniels question? That's right. Right. Okay, great. Right. I mean, if the government adheres to the position that it's taking now with respect to the conspiracy conviction, we may have to litigate that point on remand. So I could see a panel wanting to give guidance to the court on remand for resentencing with respect to the second question or letting it go and see what happens. Either one. And if it is a remand for resentencing, is there anything to prevent the district court from imposing the very same sentence? Only that it would be, yes, on several things. Yeah, it would be an apparent violation of North B. That is, it would appear to be vindictive to impose the same sentence when the enhancement no longer applied. There would be a lack of a timely notice that would prevent it from using the higher starting point. And I would say, and we would expect at a resentencing to post-sentence rehabilitation under PEPR. So there'd be reasons for a shorter sentence, but I can't imagine the same or a longer sentence. What was the third reason? At a resentencing, you get to invoke personal grounds for variance of a post that may have occurred between the first sentencing and the resentencing. And I would expect we would do that. Because we're talking about someone with a life history of drug abuse who's finally gotten old enough and healthy enough to change his ways. And this sentence is unwarranted. That's not before this panel, of course, but we certainly would make that argument that this was an unreasonably long sentence and the same sentence to be imposed again would be even worse. Just one question back to abrogation. If Daniels is indeed abrogated by Shular, does that mean that we'd be drawing a distinction between how we punish conspiracy and attempt? They're both inchoate crimes. What would be the basis for drawing a distinction? Right. Well, if a case like Daniels were to come up again, the question would be whether the conduct which is necessary for attempt, which is in criminal law lingo, a substantial step toward the distribution, is the conduct of distribution. And if I had that case, I'd be arguing that it's not. There are all sorts of conduct that can be a substantial step that traveling to the place where the distribution is to occur and so forth. Making the arrangement on the phone and other conduct, which probably would get you convicted of attempted distribution, but wouldn't be the conduct which is an element necessarily entailed in the offenses described in the statute according to the Supreme Court structure. But that's again, you wouldn't reach that in this case. It might or might not turn out that there was a different result in attempt cases from conspiracy cases. In any event, you wouldn't impose that. You can't say that applying the Supreme Court's Shular test, conspiracy certainly doesn't fit. Mr. Goldberg, I was going to ask, the late filing in this case was really one day, if I'm not mistaken. Is that correct? The first of the repeated filings was one day, but it's the day that matters the most, which is as Judge Greenway suggested. The point is to give you a notice before making the final decision of whether to plead guilty or take your chances at trial because the risks of what could happen at trial don't outweigh the benefits of pleading guilty. Yeah. Does it matter under error review that counterman ultimately received the sentence 144 months that was within the guidelines range even without the enhancements? Well, it's within the guidelines range without the benefit of the government's departure motion, which the judge said he was granting. So it's not really within the range. It's not within the post departure range. Okay. I thought the range was around 135 to 168. Before the 20% departure. After the departure, it's under 10 years. And there's no question the judge intended to grant that departure. And I can't imagine the government rescinding it. So I would say no to the question of within the guidelines. And then it would be a lawful sentence in the strict sense, but it wouldn't be. But that doesn't get you the government past the plain error problem. So what is your specific request in this case? Remand for resentencing? Decate the judgment, remand for resentencing without any statutory enhancement. I reserve the rest of my time for rebuttal if the court has no further questions. Thank you, Your Honor. Does the court hear me? Yes, I do. Your Honor, my name is Todd Hinckley. I'm representing the United States of America. I was going to speak about the first issue first, but it seems to me that maybe I'll address the second issue, which is, I think, a fairly short recitation in regards to Shuler and whether that advocates the Daniels case. And I would indicate that in regards to Shuler, the criminal conspiracy is not just, as Mr. Goldberg seems to indicate, it's an agreement to engage in illegal conduct. Here, the agreement was to engage in the illegal distribution of possession and had to distribute drugs. Thus, the Shuler conduct isn't just reaching an agreement, but rather is reaching an agreement to manage, distribute, or possess with intent to distribute drugs. The agreement thus involves, as its object, the drug offense. This is the same as it's found in U.S. v. Gibbs, this circuit case. The conspiracy charge, therefore, involves or necessarily entails the criminal object of the conspiracy for purposes of Shuler. So our argument is that Shuler does not aggregate Daniels. This is an inquiry crime like Daniels, and I really can't make any argument or see any argument or attempt to be different from conspiracy under Daniels' decision. Could you, I'm sorry, the last part of what you just said was not clearly audible. Did you say that you agree with Mr. Goldberger that Shuler abrogates Daniels or you disagree? Oh, boy, I'm sorry that audio wasn't very good. We disagree. We think that the Daniels case dovetails very nicely with Shuler because the court was looking to see whether or not the predicate, the offense attempt, whether or not it's related to or connected with the crime being attempted. That fits very, it dovetails right in with Shuler when they're talking about, they look at what the conduct is, not what the particular elements of the crime are. And so what our argument is that Shuler does not abrogate Daniels. Daniels, in fact, dovetails nicely with Shuler and that per Shuler, the conduct of the conspiracy is that of the manufacturer distribution and possession of the distributed drugs. Thus, the conspiracy involves the family drug effect and therefore the Shuler case does not abrogate Daniels. Is there a distinction to be drawn between involve and entail? I don't think there is. What, how, how could we rule in your favor when conspiracy, unlike attempt, does not even require a substantial step toward the condition of a crime? And our argument is that under Shuler, the court was looking to see what the conduct was. What was the conduct? Was it related to the distribution of possession of the distributed drugs? That's what conspiracy is. It's related to that. Just to, just to edify, if you can, how conspiracy meets the necessary entail standard. Well, because conspiracy is just not an agreement, right? The conspiracy has to be with an object of some agreement to do something. And the conspiracy to manufacture, to distribute, or to possess that was the object. That was what they, the two or more people had agreed on doing. So it has, it necessarily entails it. If there's no agreement to violate the federal or the state drug laws, there's no crime. How should we think about Kawashima in this dynamic? Shuler seemed to look to Kawashima. Are you saying that the focus on Kawashima doesn't create a different analysis of Daniels vis-a-vis Shuler? Yeah, I don't think it does. Because I think Daniels dovetails very well with Shuler. Well, in Kawashima, right, there was admittedly a different criminal statute in the case, but there was a focus on involve. And I understand that you say it dovetails nicely. But I think that Judge Cowen was alluding to, is there a difference between entail and involve? And if there is, what's the consequence of that for our analysis? I just don't see the difference. Sorry, maybe I'm a little bit simple-minded. Don't say that on the record. It's disingenuous. Well, it might be true, though. I just don't see the distinction there. Because the conspiracy is to do something for conspiracy for this type of crime, to commit the very crime, you know, the subject of Schumacher. Well, let me ask you this question, slightly off what we've been focusing on. Would you agree with the proposition that if we did vacate for resentencing, we don't have to address the issue? Yeah, I think that's correct. All right. Well, then let's move to 851A for a moment, then. The essence of what you're asking for, if I understand your argument, is for an exception. And you're asking for an exception, because in your view, the plea agreement, Mr. Goldberger says clues, you say information, but the plea agreement is sufficiently clear in telling a reader that the government was going to seek an enhancement. Yes? Yes. Yeah, right. So my question is this. Judge Fuentes focused on a couple of questions on this being one day afterwards. If we rely on your notion of it's a clear understanding that you're asking for an enhancement, we'd have no rule at all, right? Because it doesn't matter whether it was one day, or a month, or six months, the government would just say, hey, the guy knew it all along, it doesn't matter. I take it that would be your position, right? That the one day and the temporal proximity that presents is not really relevant. It's the fact that he should have known that there was going to be an enhancement. So, Judge, you're trying to use me as a tool to undermine Judge Fuentes' thoughts. Listen, I'm not using you as a tool. I'm asking you a question. I don't know how I'm going to come out. You should never think that an appellate judge is showing his hand by asking a question. You don't know where I'm at. Very good, very good. So, I'm not sure that the timing is particularly important, at least for the argument that I've made, which is the question I think before the court, and if the court determines that this is a procedural rather than a jurisdictional rule in these particular circumstances, the question really is does the defendant have actual knowledge that the government was going to seek the enhanced sentencing? And if you think about it, any defendant who is pleading guilty, that's really what he cares about. He cares about what am I facing? Is there a mandatory minimum sentence? How long can I be put in jail? If those are the things that are important and what they focus on. That undermines Congress, right? Why did Congress pass the statute? If that's so, you know, you just say, hey, it's on the defendant. Look at the plea agreement and he'll understand that it's either an enhancement or not. Congress chose to pass the statute. It requires, whether it's jurisdictional or not, I think we can put to the side for the moment, but it does obviously require two pieces of information. I know that you've spent much of your argument in your brief on one of those pieces of information, and that is the enhancement, but we haven't spent any time, or you spent relatively less time, I should say, on the charge change, right? From one instance to the other. Now, if it were the original charge, had the defendant known that before he pled, that could lead to one determination. If it was the one that showed in the third iteration of the 851, that may have led to another determination. Doesn't that fact or that possibility say that, yes, as Congress has said, it should be before the plea, and in this particular instance, whether you read the plea agreement in a particular way that sheds light, as you suggest, is not relevant? Well, I think it is relevant, and I would say that, if I recall Mr. Kahneman's brief, he indicated that the government had filed and amended 851 notice, and that, in his view, at least in the brief, was not the problem, because if 851 notice, however faulty was filed the day of the plea or the day before the plea, I think he would agree, and I would argue that the government, as we determined that perhaps 851 original notice was either the crime that we were relying on, wrong date or wrong document or whatever, we could file the amended, because ultimately, really, I mean, the touchstone here is whether or not the guilty plea was intelligent, made knowingly intelligently when it was made, and in order to do that, I guess, and what the defense is really concerned about is, okay, what am I facing? Now, what crimes are they relying on? I felt that it made the defense to care about that, and here, it's clear, the agreement says, these are what the maximums are, these are what the mandatory minimums are, and so he knew exactly what the deal was and what estimates were going to be applying to his case, and more than that, he had a hand in negotiating guilty plea, so he had a hand in deciding how his case would go forward, what crimes he would be pleading guilty to, and to what the, how his particular criminal history would relate to those crimes in regards to what types of sentences he could expect. The plea agreement provides, how does the plea agreement provide adequate notes of intent to where the document contains no express reference to such enhancement, prior convictions, or the anticipated or potential filing of a notice to seek an enhanced sentence? Nothing like that is there. No, there is nothing like that, your honor. Well, it's not what's required under the statutory requirement. That's correct, but I think the question under the plain error review isn't whether or not the defense knew all the intricacies about what crimes we are relying on, and things like that, but whether or not he knew, as I said in the touchstone, is whether he knew that the enhanced sentences were what he was facing. Yeah, you've got to focus on what the effect of the information is on the most critical decision a defendant has to make, and that is, do I go to trial or do I plead, right? You're talking about a secondary consideration, which is, if I plead, what do I face? But then in the first instance, you need the information, and I think that the thing that's troubling each of us in a different way is if you are not guaranteed an understanding by, we're talking about across the board, you're asking us to essentially make an exception to 851A when we think that a defendant knows from the plea agreement what's going on, which seems loosey-goosey is one way of describing it, but the other thing is what convictions will the government rely on? I think when you look at both, you can't come up with a, what's the rule for the exception? You want us to say there's an exception to a timely filing. What's the rule that we are to apply for that exception? Well, you know, I see I'm out of time, so if I may answer this question, and then... Please answer. So, I think that it's fair to say that Mr. Conerman, like any other defendant, similarly situate, knows what his criminal history is, knows what he's been convicted of, and so what ours, I know I'm focusing on one part, but I think that's the important part to Mr. Conerman and to any other defendant. Have you ever had a mistake in a PSR? Oh, yeah. In regard to a conviction? Yes. It's a piece of information that has to be known for just that reason. I'm sorry, I missed the last part of that, Your Honor. I said it's a piece of information that has to be known for just that reason. It might be incorrect. Yes. Mr. Hinckley? Yes, sir. Yeah, do you know of any other court that has excused a failure to file a PSR? And section 851A before sentencing? I think that there were a couple of circuits that have done so based on the question of whether or not this is a jurisdictional issue or a procedural issue. As long as the defendant had actual notice of government intent to seek the enhancements that if it's procedural under pre-placed care, they allow this stance. But it is a statutory right and it imposes a very stringent requirement on the government, doesn't it? Don't I know that, or will it be there? It certainly is because it affects a defendant's decision whether to plead guilty or not. And it has to be provided before sentencing. So I guess you answered my question. You don't know of any court that has determined that a failure to file in 851A affects its substantial rights and no court that you're aware of has excused a failure to file. Am I accurate? I think that there were some circuits that found under plain error review for a situation government had failed to file an 851 notice. As long as the actual notice, whether or not it was filed, they found that it survived plain error. All right, you would agree that's the standard of review that we would be working under? Yeah, Mr. Hinckley, I think there was a case scenario for you, you lose all the notice requirements and we remanded back to the district court for resentencing. Could we, is it your position that we would have to condition the resentencing or could the district court just resentence him and as he has done in this case? Would there be any limitation on the sentence? I haven't really given that much thought on it, but I'm thinking that if it were remanded, it would be on the court's decision that the lack of the 851 notice means that we would have to go back to the district court with effectively a PSR having the guideline range without reference to the mandatory minimum. And so I don't think there would have to be a limitation because it would naturally run from that. So your position is that if we say the notice was improper, incorrect, and we remand back for resentencing, the district court could just resentence the sentence in this case that stands before us right now. Is that your position? I believe that is correct, Your Honor. Judge Fuente, do you have anything further, sir? No, I'm good. Thank you. And Judge Cowan? That's it. Thank you. All right. Very good. Mr. Goldberger, your two minutes, if you please. Two quick points. First on the cases that have excused the government's noncompliance in a plain error context. I mean, first of all, if there had been a proper objection by defense counsel here, we wouldn't be having this discussion at all. And I don't think I heard the government say anything different, but only in the plain error context. I believe those cases, as my fully equivalent actual notice. Now, where would that notice be given? Typically, you would expect that notice to occur in the Rule 11 colloquy. That is, the court would advise the defendant, as the rule requires, what the mandatory minimum was that applied to the case. And if it was different from what it would ordinarily be, there'd be some colloquy and discussion of why and on what basis. And a prudent judge would then, if the defendant seemed surprised, give the defendant an opportunity to change his or her mind about pleading. But if, as I mentioned in the brief here, the Rule 11 colloquy is as wrong and inadequate here as the 851 notice. The judge never advised about the mandatory minimum. The colloquy was compliant. And so, we just don't have a notice that's worth discussing as being equivalent in this case. Second, one point on Shular and the government's point that they opened with about it's an agreement, a conspiracy is not just an agreement, it's an agreement to do something. Well, of course, that's correct. But that's one of the intent elements of a conspiracy. It's an agreement with the intent to accomplish the commission of a certain crime. The Supreme Court, when it talks about the mens rea element of conspiracy, talks about the object of the conspiracy as one of the two intent elements, the intent to agree and the intent to accomplish the object. But the Supreme Court decision in Shular rejected, at the government's test, rejected the defense argument that an offense wouldn't come within the statutory rule if it didn't have the right sort of mens rea element and said, no, in this statute, we're not concerned with the mental elements, only with the conduct. That's the core of the holding of Shular as it relates to the question presented in Shular. The conduct in conspiracy is not, you can't sneak an intent into the conduct and say that it comes within Shular. So for those reasons, I think the only proper consequence would be a reversal and a resentencing. Wait, you mean vacate? You mean vacate? Yeah, vacate the judgment and remand for resentencing, yes. Yeah, vacate and remand. Yeah, yeah. All right. Well, thank you very much, counsel. We appreciate your arguments. We'll take the matter under advisement and I wish the best to you and your families. Keep safe during this time. Thank you. Thank you.